UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GUY SCZCERBA,

        Plaintiff,

v.                                               **DECISION AND ORDER**
                                                                13-CV-098S

UNITED STATES VETERANS ADMINISTRATION,

        Defendant.

        1.      Guy Szczerba commenced this medical-malpractice lawsuit on January 30, 2013. He contends that he received negligent care during a surgery on June 26, 2007 at a hospital maintained by the United States Veterans Administration (VA), an agency of the United States government. He therefore brings this claim under the Federal Tort Claims Act, which waives the United States' sovereign immunity for some types of claims. Although Szczerba names the VA as the defendant and refers to several physicians throughout his complaint, the Federal Tort Claims Act makes clear that there can be but one true defendant in such an action – the United States. See 28 U.S.C. § 2679(a); Rivera v. United States, 928 F.2d 592, 609 (2d Cir. 1991).

        And it moves to dismiss the action. The United States contends that Szczerba did not present an administrative claim within two years of the alleged negligent act – the June 26, 2007 surgery – as required by the Federal Tort Claims Act. See 28 U.S.C. § 2401(b).

        Szczerba concedes that he did not file the required notice-of-claim within two years of the surgery, but nonetheless contends that the limitations period has not expired. He maintains that he received "continuing care" related to that 2007 surgery – care that lasted until October 2011. And since he filed the administrative claim in December 2011, just two

months later, his claim, he argues, is not barred by the two-year statute of limitations.

But, for reasons discussed below, this Court finds otherwise. The United States' motion will therefore be granted and this case dismissed.

2.	Section 2401(b) of Title 28 of the United States Code, in relevant part, provides that a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."

3.	If the plaintiff cannot prove that he has met this prerequisite, a court must dismiss the action for lack of subject-matter jurisdiction. Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2d Cir. 1999). "Claims under the F[ederal] T[ort] C[laims] A[ct] accrue either at the time of injury or when the plaintiff has, or with reasonable diligence should have, discovered the facts critical to his or her injury, whichever is earlier." Id. "Nonetheless," the Second Circuit has "recognized that where the plaintiff is in the continuing care of the negligent actor for the same injury out of which the F[ederal] T[ort] C[laims] A[ct] cause of action arose, the statute of limitations may be tolled under certain circumstances until the end of the course of treatment." Ulrich v. Veterans Admin. Hosp., 853 F.2d 1078, 1080 (2d Cir. 1988).

According to the Second Circuit, two practical rationales support this doctrine. The first provides that "it is not reasonable to expect a patient who is in the continuing care of a doctor to discover that the doctor's acts may be the cause of his injuries." Id. The second rationale provides that it is unreasonable "to expect a patient being treated by a doctor or hospital to interrupt corrective treatment by instituting suit against either while under their continuing care." Id. The doctrine, however, does not apply if the rationales underlying it

2

are not present. See, e.g., Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville, No. 05 CIV. 6998 (DLC), 2006 WL 2882975, at *3 (S.D.N.Y. Oct. 10, 2006) (declining to apply the doctrine because "neither rationale is implicated").

4. Szczerba contends that the doctrine applies to this case.

As noted, on June 26, 2007 Szczerba underwent surgery at a VA hospital. In the course of that surgery he suffered a bladder tear. And a subsequent surgery was needed to repair it. (Pl.'s Br. at 2; Docket No. 23.) Afterwards he complained of abdominal pain, and he was prescribed pain medication to take "as needed." He had some follow up contact with various medical professionals at the VA regarding this pain, and for some time he remained on a course of treatment intended to help him cope with it. (See Pl.'s Ex. B; Docket No. 20-2.)

Szczerba also underwent care for "complications related to the bladder tear" at Roswell Park Cancer Institute. He argues that this treatment ought to be imputed to the VA because the VA paid for it. (Though, to be clear, Szczerba does not contend that the continuing care was itself deficient. Nor does he have to. See McCoy v. United States, 264 F.3d 792, 795 (8th Cir. 2001) (noting that Second Circuit does not limit the continuous-treatment doctrine to continuously negligent treatment)).

5. But this Court finds that neither of the rationales supporting the doctrine are present here, and it finds that Szczerba's arguments stretch the doctrine of "continued care" too far.

It t is incontrovertible that Szczerba had access to information that made him aware of the existence of a cause of action in June 2007. There is, in fact, no dispute that he was displeased with the result of the surgery almost immediately after it was completed. Indeed,

3

according to medical records, just a few days after the procedure, Szczerba called his doctors "incompetent" and threatened to both picket at the hospital and call the news. Thus, the first rationale for applying the continuing-care doctrine – that it is "not reasonable to expect a patient who is in the continuing care of a doctor to discover that the doctor's acts may be the cause of his injuries" – is glaringly absent.

6.  The second rationale is equally inapplicable. The VA's involvement in Szczerba's care after the surgery was exceedingly limited; it simply prescribed Szczerba pain medication and made payments for care provided at another facility. Szczerba offers no authority for the proposition that this attenuated relationship with the VA, and more specifically, the absence of any relationship with the doctors that actually performed the surgery, can toll the statute of limitations under the Federal Tort Claims Act. In fact, Szczerba cites only one case where the acts of one facility were imputed to another. And that case, Ganapolskaya v. V.I.P. Med. Associates, was decided not by a federal court, but by New York's First Department; and the court did not apply the Federal Tort Claims Act, but New York procedural law; and the statute of limitations was not tolled for a few *years* (as Szczerba contends the statute should be here), but only a few *days*. 221 A.D.2d 59, 61, 644 N.Y.S.2d 735 (1996).

7.  On the other hand, there is substantial relevant authority – including authority from the Second Circuit – finding that the continuing-care doctrine does *not* apply under these circumstances. See Camire v. United States, 535 F.2d 749, 750 (2d Cir.1976) (rejecting doctrine "since the treatment was not continuous by the same doctor (or an associate) or the same hospital"); Crosby v. United States, No. 09-CV-277S, 2010 WL 3386823, at *5 (W.D.N.Y. Aug. 25, 2010) (statute not tolled where plaintiff received follow-

up care from different doctors); Harrison v. Fed. Bureau of Prisons, No. CIV.A. 8:08-1003-HFF, 2008 WL 5429827, at * 7 (D.S.C. Dec. 30, 2008) ("[C]ourts consistently refuse to apply the doctrine where the patient has received care from a number of physicians or hospitals."); Espinoza v. United States, 715 F. Supp. 207, 210 (N.D. Ill. 1989) (declining to apply the doctrine because, among other reasons, the plaintiff "was not in fact receiving corrective treatment at the Hospital – indeed, he was receiving corrective treatment *elsewhere* for the alleged injury!") (emphasis in original); Dundon v. United States, 559 F. Supp. 469, 473 (E.D.N.Y. 1983) (statute not tolled by continuing-treatment doctrine where the plaintiff was treated by different VA doctors in different VA hospitals); DeGirolamo v. United States, 518 F. Supp. 778, 780-81 (E.D.N.Y. 1981) (statute not tolled by intermittent treatment for nearly three years where claimant had knowledge of his injury and its causes the whole time). Cf. Ulrich, 853 F.2d at 1081 (tolling the statute even though the plaintiff was treated by different doctors because "the Psychiatric Service's negligence required the corrective efforts of specialists in another medical area of the same institution"); Otto v. National Institute of Health, 815 F.2d 985, 988-89 (4th Cir.1987) (tolling the statute even though the plaintiff was treated by private doctors between surgeries because the treatment was rendered at the advice and under direction of government doctors, to whom the private doctors consistently and repeatedly deferred).

8.     Here, Szczerba was fully aware of all the facts that would underlie his lawsuit moments after those events occurred; Szczerba himself requested and subsequently received care at another facility; there is no indication or allegation that any VA doctors had any input regarding his follow-up care at Roswell Park; nor is there any indication or allegation that negligence from the 2007 surgery forced Szczerba to resort to the expertise

of specialists "in another medical area of the same institution"; and he does not argue that the physicians who actually performed the surgery provided, themselves, any further care. Rather, the uncontroverted evidence demonstrates the opposite: none of the physicians involved in the June 2007 surgery treated Szczerba after his discharge from that surgery in July 2007. (See Evans Decl., ¶¶ 4–5; Docket No. 18). Under this set of the facts the law is clear: the statute cannot be tolled.

9. Because Szczerba's notice-of-claim was submitted far beyond the time limitation prescribed by the Federal Tort Claims Act, and because the period was not suspended under the continuing-care doctrine, this Court lacks subject-matter jurisdiction to hear his case. See Johnson, 189 F.3d at 189. In the bombastic language of the Federal Tort Claims Act, Szczerba's claim is "forever barred."

****

IT HEREBY IS ORDERED, that Defendant's motion to dismiss (Docket No. 15) is GRANTED.

FURTHER, the Clerk of Court is directed to close this case.

SO ORDERED.

Dated:  May 8, 2014
       Buffalo, New York

                                          /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          Chief Judge
                                          United States District Court